CASE No. 960.

OSTENDORFF v. COUNTY COMMISSIONERS OF CHARLESTON.

1. For work done by a clerk of court officially, he can recover only such compensation as is fixed by the fee-bill; but preparing a new index to judgments and decrees is no part of the regular and ordinary duties of such office.

2. A Circuit judge has no power to bind the county to pay for work done upon the public records of his court, in accordance with the recommendation of the grand jury, nor can he refer it to a master of the court to fix the proper compensation for such work, nor, upon report made, order payment.

3. In the absence of contract no action will lie against the county commissioners demanding payment for work done upon public records of the Circuit Court, although such work, when done, was used by the public.

4. The county commissioners are the legally constituted agents of the county, and to them alone is given the power to contract county obligations.

---

Before WALLACE, J., February, 1878, ALDRICH, J., December, 1879, and PRESSLEY, J., February, 1880, Charleston.

This case is fully stated in the opinion of the court.

*Mr. J. E. Burke,* for appellants.

*Mr. H. A. M. Smith,* contra.

January 10th, 1881. The opinion of the court was delivered by

McGowan, A. J. This case was submitted on an agreed statement of facts. At the February Term of the court for Charleston county, 1878, the grand jury made a presentment, recommending " that the books containing the index of judgments and decrees from January 1st, 1870, to the present time, be written and arranged lexicographically, under the directions of the court." Whereupon Judge Wallace ordered " that the clerk have the index re-written and lexicographically arranged." It seems that under this order the clerk commenced to do the work himself, and October 1st, 1879, rendered a bill against the county commissioners for the sum of $1636, for the performance of about one-third of the whole work, embracing only judgments and decrees, " where the names of the defendants commence with the letters A, B, C, D, E and F."

The county commissioners refused to allow the account, so far as it exceeded the rates fixed by the act of 1878 for copying papers, which would, by a liberal construction, give for the services then rendered, the sum of $122.40. From this audit the clerk appealed to the Court of Common Pleas. Judge Aldrich heard the appeal and ordered that the claim be referred to W. D. Porter, Esq., one of the masters, " to ascertain and report what would be proper compensation for the work done by the clerk, with leave to report any special matter." The county commissioners excepted to this ruling. The master, conceiving that under the order of Judge Aldrich he had no right to consider any question but that expressly referred to him, " to ascertain and report what would be a proper compensation for the work done by the clerk," took testimony and recommended that he should be paid at the rate of *forty cents per name,* which would amount to the sum of $654.40. The county commissioners also excepted to this report.

The case, upon the exceptions, came on to be heard before Judge Pressley, who, announcing that " the legal questions had been virtually decided by the previous orders, and that it would be improper in him to set aside the order of another Circuit judge," confirmed the report and ordered the county commission-

ers to pay the plaintiff the sum of $654.40. From this and both the previous orders the county commissioners except, upon the following grounds:

" 1. Because the law imposes upon the county " the obligation to pay for the services of the clerk at the rates allowed by law; that these rates for copying and recording are fixed in the. fee-bill for the clerk; that these rates furnish the proper measure of compensation for the work done, and that the amount allowed is greatly in excess of these rates.

" 2. Because if the services of the clerk are not to be paid according to the fee-bill, then, by act of 1878, he can charge nothing for his services at all, and the appeal from the county commissioners should be dismissed.

" 3. Because the only obligation upon the county to pay for said services is that imposed by statute—that such obligation is not imposed by order of this court, made by Judge Wallace, directing the work to be done, the county not being a party in that proceeding—and the obligation imposed by statute is to pay at the rate fixed by law.

" 4. That the work is still unfinished as a whole and the bill was prematurely presented for audit.

" 5. That the order of reference did not necessarily imply that the clerk was not to be paid according to the fee-bill.

" 6. At most, under the fee-bill, the clerk was entitled to no more than the amount stated in the master's report, as the value by the said fee-bill of copying the said names three times."

In order to prevent confusion it is necessary to understand clearly in what character this claim is made. In form, it is a proceeding by the clerk of the court, as such, against the county commissioners of Charleston county for services rendered as clerk. But, as we understand it, from the character and amount of the claim, it is, in reality, an action by John H. Ostendorff, as an individual, against the county of Charleston for *the value of said services*. If we are to consider this as a claim by the clerk in his official character for ordinary services rendered in the discharge of his official duties, and in reference to which a Circuit judge, in enforcing the law, had the right to make orders, then of course the clerk must look to the law as fixing the compensa-

tion for such services. "Fees of the clerks of the Circuit Court in state cases, *and for all other services,* to be paid by the county at the rates allowed by law." 15 *Stat.* 991.

In this view there is no controversy in the case. The aggregate of the "fees" at the rate allowed by law for the work done, amounts, as is admitted, to $122.40, the sum allowed by the county commissioners.

But it is manifest that something more is claimed. The work done was in restoring and improving the public records in the clerk's office, and while it was closely connected with the regular and ordinary duties of the clerk, it was not part of them. The clerk was not bound to perform the work without special agreement with those authorized to contract, and the order of Judge Wallace neither dispensed with the necessity of a contract, nor in itself constituted one. It is not denied that the work was proper, if not necessary. It was done under an order of a judge, suggested by the presentment of a grand jury of the county, and, so far as performed, it has been done well. The proof seems to show that it required particularity, and was something more than mere copying, within the meaning of the "Act to regulate the costs of plaintiffs' and defendants' attorneys, and the costs and fees of clerks of courts, Probate judges, sheriffs and other officers." 16 *Stat.* 624.

Under the circumstances it would be only just that the plaintiff should be paid, not an extravagant price because of the accidental circumstance that as clerk he had control of the books and papers which gave him a sort of monopoly of the work, but, considering all the facts, reasonable compensation. The question of strict legal right, however, has been made, and our duty is simply to announce the law. If the plaintiff should receive less than a just compensation, it will be the result of his own act in doing work without legal authority or agreement with the proper. parties. In so far as this is an action by John H. Ostendorff, as an individual, for the value of work done upon contract, express or implied, we think it cannot be maintained, and that there was error on the Circuit, both in referring the matter of compensation to the master and in confirming his report, which could have been made only on the ground of contract. No legal con-

tract, nor assent to the work from which a contract would be implied by the proper party, appears in the case. No assent can be presumed from the use by the public of so much of the work as was done. The public, as matter of right, are entitled to the use of public records without imposing any obligation upon the county commissioners against their protest. Nor could the plaintiff, by voluntarily doing work which was useful to the county, make himself a creditor of the county, so as to enable him to sue and recover upon an *assumpsit* for its value. Neither the grand jury, nor the judge himself presiding in the Circuit Court, could make a contract to bind the county. The judge, under the law, might direct the clerk in all matters pertaining to his office, but he had no authority to order him to perform work for the county beyond the scope of his official duties, and thereby make a contract for the county, nor to fix the compensation therefor. Although the work may have been proper to be done and upon the records of the clerk's office, to which the clerk alone had access, yet the order of the judge could not make a legal county claim. The grand jury, if they think proper, may make recommendations as to the propriety of having work done for the benefit of the county, which the judge may refer to the county commissioners for their action, but they alone, the county commissioners, can make contracts binding on the county. *Lesly* v. *Com'rs of Public Buildings,* 1 *Spears* 32; *State* v. *Com'rs of Public Buildings,* 12 *Rich.* 300.

In this last case cited, Judge Withers, as the organ of the court, said: "The presentment of grand juries upon matters within the discretion vested in other bodies, are but advisory to such bodies and suggestive to the court. Successive judges are as little qualified by proper information as they would be inclined by disposition to determine any matter such as is in controversy here; and a matter not expressly enjoined upon the commissioners by law, but referred to discretion, should be left with those whom the legislature have directly appointed to exercise that discretion."

In the case from Spears, David Lesly was Ordinary of Abbeville county. He desired a seal for his office, which he purchased, and sued the commissioners of public buildings for the

money paid for it, and the court held that "they were not liable to be sued for money expended by the Ordinary in purchasing articles for the use of his office, when the articles were *not furnished at the request of the commissioners.*"

The board of county commissioners is one of the most important agencies created by the constitution of 1868. It is the local administrative body of the county—both to contract and provide payment. Before the present constitution there existed in the state for the purpose of facilitating local government, a number of district boards—such as commissioners of roads; of the poor; to approve public securities; and commissioners of public buildings. The powers and duties of all these boards were, by the constitution, united in the boards of county commissioners, and others no less important were added, including the payment of contingent accounts, formerly paid by the state. The act of 1875, "to reduce all acts and parts of acts in relation to county commissioners, their powers and duties, into one act, and to amend the same," (15 *Stat.* 985), contains, among others, these provisions :

"That county commissioners elected in pursuance of Section 19, of Article IV. of the constitution, shall have jurisdiction over * * * *all matters relating to taxes and disbursements of money for county purposes,* and in every case that may be necessary to the internal improvement and local concerns in their respective counties." § 1.

"To cause to be levied, collected and paid to the county treasurer a certain sum of money, which, in their judgment, may be necessary to pay all claims against the county for fees, disbursements, services or labor," &c. § 10, *subd.* 4.

"And all work given out by the county commissioners to be done on public buildings as aforesaid, when the amount shall exceed the sum of one hundred dollars, shall be done by contract, and the commissioners are hereby required to advertise the same," &c. § 14.

"No accounts shall be audited and required to be paid by the county commissioners for any labor performed—fees, services or disbursements, or any other matter, unless such account shall be made out, &c. * * * No allowance or payment beyond

legal claims shall ever be allowed, and the board of county commissioners in any county may refuse to audit or allow any claim or demand, whatever, unless made out and verified in the manner herein specified." § 21.

" County commissioners shall, annually, on or before the first day of November of each year, prepare and make up the estimate for all county charges and debts for the fiscal year then ensuing, * * * and the rate of taxation necessary to raise money to meet the same." § 31.

It thus appears that the county commissioners are the legally constituted agents of the county, and, as such, make all estimates and disbursements for county purposes. They are supposed to know best the needs and means of the county, as they are charged with the duty of liquidating, so they alone are given the power to contract county obligations. It would necessarily lead to confusion to allow one official, who may not be a citizen, to make, by a simple order, contracts binding upon the county, and thus to administer their local affairs without the checks imposed by the law, and without the knowledge, consent or request of those upon whom the duty and responsibility are imposed.

The orders in the Circuit Court of February Term, 1878, of December 19th, 1879, and of May 27th, 1880, which recognize and impose as a legal demand, recoverable against the county of Charleston, the claim of John H. Ostendorff for compensation for doing the work aforesaid in the clerk's office of Charleston county under an order of court, without the request or consent of the county commissioners of that county, should be reversed, and it is so ordered.

SIMPSON, C. J., and McIVER, A. J., concurred.